UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REALPAGE, INC.,

                                       Plaintiff,

                - against -

LETITIA JAMES, in her official capacity as the
Attorney General of the State of New York,

                                        Defendant.

Case No. 1:25-cv-9847 (VEC)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

                          LETITIA JAMES
                          Attorney General
                          State of New York
                          28 Liberty Street
                          New York, New York 10005
                          Tel.: (212) 416-8673

YUVAL RUBINSTEIN
Special Litigation Counsel
    of Counsel

# **TABLE OF CONTENTS**

    Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT S.7882 REGULATES CONDUCT AND DOES NOT RESTRICT SPEECH................................2

II.     PLAINTIFF'S CHALLENGE TO S.7882 FACIALLY AND AS-APPLIED TO ITS LANDLORD CLIENTS IS DEFICIENT AS A MATTER OF LAW ..........................6

CONCLUSION..................................................................................................................................8

# **TABLE OF AUTHORITIES**

**CASES** Page(s)

*Am. Medical Ass'n v. FTC*, 638 F.2d 443 (2d Cir. 1980) .................................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................7

*DoorDash, Inc. v. City of New York*, 789 F.Supp.3d 337 (S.D.N.Y. 2025) ...................................3

*Duffy v. Yardi Systems, Inc.*, 758 F.Supp.3d 1283 (W.D. Wash. 2024) ..........................................4

*FTC v. Shkreli*, No. 22-728, 2024 WL 1026010 (2d Cir. Jan. 23, 2024) ........................................3

*FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) ..................................................6

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ................................................. passim

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ...............................................................3

*Moore v. Hadestown Broadway LLC*, 722 F.Supp.3d 229 (S.D.N.Y. 2024)...................................3

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) ............................................................3

*Planned Parenthood v. Comm'r, Ind. State Dep't of Health*, 732 F.Supp.3d 971 (S.D. Ind. 2024)...............................................................................................................................3

*In re RealPage, Inc., Rental Software Antitrust Litigation*, 709 F.Supp.3d 478 (M.D. Tenn. 2023) ..........................................................................................................................4

*Rumsfeld v. FAIR, Inc.*, 547 U.S. 47 (2006) ....................................................................................5

*Universal City Studios, Inc. v. Reimerdes*, 82 F.Supp.2d 211 (S.D.N.Y. 2000) .............................5

*U.S. v. Hansen*, 599 U.S. 762 (2023).............................................................................................5

*U.S. v. Williams*, 553 U.S. 285 (2008)...........................................................................................5

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988).........................................................7

*Yellowhammer Fund v. Marshall*, 776 F.Supp.3d 1071 (M.D. Ala. 2025) ....................................3

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................................................................. passim

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

**STATE STATUTES**

N.Y. Gen. Bus. Law § 340-b ................................................................................................ *passim*

N.Y. Gen. Bus. Law § 340-b(1)(c).................................................................................................5

N.Y. Gen. Bus. Law § 340-b(1)(c)(iii)...........................................................................................4

N.Y Gen. Bus. Law § 340-b(2) .....................................................................................................5

N.Y Gen. Bus. Law § 340-b(3). ....................................................................................................5

Defendant Letitia James ("Defendant"), in her official capacity as New York State Attorney General, respectfully submits this reply memorandum of law in further support of her motion to dismiss the Complaint (ECF No. 1), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## **PRELIMINARY STATEMENT**

Defendant's opening memorandum demonstrated that Plaintiff RealPage, Inc.'s ("Plaintiff") First Amendment challenge to S.7882 is subject to dismissal with prejudice. In particular, S.7882 regulates anticompetitive conduct in the rental housing market and does not tread upon any protected speech in the first place.

Plaintiff's opposition fails to cite any authority establishing that S.7882 (or any other antitrust statute) restricts protected speech rather than unprotected conduct. Perhaps recognizing this deficiency, Plaintiff attempts to stave off dismissal by advancing the bewildering proposition that S.7882—which adds a new subsection to New York's 1899 antitrust statute known as the Donnelly Act—somehow is not an antitrust provision at all. In support of this startling assertion, Plaintiff contends that S.7882 only restricts the algorithmic recommendation and does not target any "independently unlawful conduct" to restrain trade.

But Plaintiff's argument ignores the very nature of a hub-and-spoke arrangement, which does not require any "independent" agreement amongst the spokes—in this case, the landlords utilizing the price recommendations—not to compete. Plaintiff similarly errs in contending that S.7882 violates the First Amendment by restricting the "message" Plaintiff wishes to convey to its customers; indeed, the algorithmic recommendation is part-and-parcel of the anticompetitive conduct regulated by S.7882. Moreover, Plaintiff's contention that S.7882 does not distinguish between pro-competitive and anti-competitive conduct has no bearing upon the First Amendment

1

analysis, and Plaintiff's reliance upon antitrust cases and the "preliminary analysis" of Dr. Loren Hitt is misplaced and unavailing.

Finally, Plaintiff's opposition further demonstrates that the threadbare allegations in the Complaint cannot support Plaintiff's facial challenge to S.7882 or its purported "as-applied" challenge to S.7882 on behalf of its landlord clients. Accordingly, the Court should grant Defendant's motion and dismiss the Complaint with prejudice.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION FURTHER DEMONSTRATES THAT S.7882 REGULATES CONDUCT AND DOES NOT RESTRICT SPEECH

Plaintiff's First Amendment claim is ripe for dismissal because S.7882 does not restrict any protected speech in the first place. *See* ECF No. 40, Defendant's Memorandum of Law in Support of Her Motion to Dismiss the Complaint and in Opposition to Plaintiff's Motion For a Preliminary Injunction ("Memo."), at 9-12. Indeed, this case involves a straightforward application of *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949), which held that a state's antitrust law does not violate the First Amendment even if the anticompetitive conduct is conveyed "by means of language." Memo. at 9-10. Moreover, Plaintiff's reliance upon *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) is misplaced, as *Sorrell* in fact reaffirmed *Giboney*'s holding that "antitrust laws can prohibit agreements in restraint of trade" because such laws only "impos[e] incidental burdens on speech" (cleaned up). Memo. at 11.

Plaintiff's opposition fails to cite *any* First Amendment case in which an antitrust statute was determined to restrict protected speech in violation of the First Amendment. ECF No. 45, Plaintiff RealPage, Inc.'s Consolidated Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Further Support of its Motion for a Preliminary Injunction ("Pl. Opp."), at 7-10. And Plaintiff's discussion of *Sorrell* yet again skips over the dispositive language in the decision

2

making clear that antitrust statutes regulate conduct, not protected speech. *Id.* at 8-9. In short, Plaintiff's opposition reaffirms that its First Amendment challenge to S.7882 is foreclosed by decades of well-settled precedent. *See also FTC v. Shkreli*, No. 22-728, 2024 WL 1026010, *3 (2d Cir. Jan. 23, 2024) (public statement ban imposed upon pharmaceutical executive was permissible method of "preventing possible future antitrust violations," and did not violate free-speech rights).[1]

Rather than citing any applicable authority, Plaintiff attempts to sidestep *Giboney* by proffering the dubious assertion that S.7882 is not a genuine antitrust statute, and that the State cannot use the antitrust "label" to justify S.7882's constitutionality. Pl. Opp. at 1-2, 7. But Plaintiff's assertion is absurd: S.7882 adds a new subsection to New York's longstanding antitrust statute, the Donnelly Act, which was originally enacted in 1899. Memo. at 10. Plaintiff's purported slippery slope concern—that the Legislature could hypothetically affix the label "antitrust" to any statute to ban "a host of other speech" (Pl. Opp. at 1, 8)—is far-fetched given the actual statute the Legislature *did* enact.

The crux of Plaintiff's argument is that S.7882 does not target any "independently unlawful conduct" to restrain trade, and only restricts the recommendations conveyed by a pricing

---

[1] Plaintiff relies heavily upon *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) in arguing that S.7882 regulates protected speech. Pl. Opp. at 2, 5-6, 8. But Plaintiff's reliance upon *Holder* is misplaced, as the Supreme Court emphasized that the federal government's "passing" attempt to analogize a statute prohibiting coordination with a foreign terrorist organization to *Giboney* was not sufficiently developed, and the argument was not considered. *Id.* at 27 n.5. Nor does *U.S. v. Caronia*, 703 F.3d 149, 161 (2d Cir. 2012) support Plaintiff's argument, as the government argued that the defendant's "speech was itself the proscribed conduct." But in this case, the algorithmic "speech" facilitates the anticompetitive conduct that is itself the object of the statute. Plaintiff's opposition also cites two out-of-circuit decisions that distinguish *Giboney*. *See Yellowhammer Fund v. Marshall*, 776 F.Supp.3d 1071 (M.D. Ala. 2025); *Planned Parenthood v. Comm'r, Ind. State Dep't of Health*, 732 F.Supp.3d 971 (S.D. Ind. 2024). Both decisions involved challenges to restrictions on assisting out-of-state abortions and are clearly inapposite to the text and purpose of S.7882. The other decisions Plaintiff cites are similarly inapposite. *See DoorDash, Inc. v. City of New York*, 789 F.Supp.3d 337 (S.D.N.Y. 2025); *Moore v. Hadestown Broadway LLC*, 722 F.Supp.3d 229 (S.D.N.Y. 2024); *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020). The decisions merely determined that the plaintiffs were challenging protected speech rather than non-expressive conduct, and had no occasion to determine whether any "speech" was intertwined with unlawful conduct under *Giboney* and its progeny, as in this case.

algorithm. Pl. Opp. at 7-8. Plaintiff also asserts that this supposed "one-way recommendation" does not give rise to any agreement not to compete. *Id.* at 10.

But Plaintiff's argument elides the very nature of a hub-and-spoke arrangement, which does not require an express agreement amongst the "spokes" not to compete. Memo. at 3-5 (describing how hub-and-spoke arrangements facilitate anticompetitive conduct). *See In re RealPage, Inc., Rental Software Antitrust Litigation*, 709 F.Supp.3d 478, 507-08 (M.D. Tenn. 2023) (Plaintiff's landlord clients can engage in horizontal conspiracy even if they act independently and have no discussions with each other); *Duffy v. Yardi Systems, Inc.*, 758 F.Supp.3d 1283, 1292-93 (W.D. Wash. 2024) (landlords can engage in unlawful restraint of trade even if they "did not meet as a group but rather used an intermediary" to compile data and calculate the "supracompetitive rental rate").[2] Thus S.7882 permissibly regulates this anticompetitive conduct that distorts the rental housing market. Moreover, Plaintiff's opposition fails to cite any First Amendment case holding that the use of an intermediary to enter into an unlawful agreement somehow transforms unprotected conduct into protected speech.

In addition, Plaintiff contends that the definition of "coordinating function" in § 340-b(1)(c)(iii) bans speech by restricting an algorithm from "recommending" prices and rental terms to landlords. Pl. Opp. at 5. Plaintiff complains that it is restricted from conveying the "message" it wishes to express to customers, in violation of the First Amendment. *Id.* at 5-6. But Plaintiff is fundamentally mistaken when interpreting the term "recommend" in isolation from the rest of the statute. The unlawful "agreement" amongst two or more residential landlords to not compete is "facilitate[d]" by the algorithmic recommendation. Gen. Bus. L. § 340-b(2). In other words, the

---

[2] Plaintiff's assertion that S.7882 does not actually target a hub-and-spoke conspiracy is thus baseless. Pl. Opp. at 12. The statute is designed and intended to regulate the type of anticompetitive conduct detailed in these recent decisions.

4

recommended price is the very mechanism enabling landlords to charge higher rents than a competitive market would bear.

S.7882's restriction on algorithmic recommendations is thus "plainly incidental to [the statute's] regulation of conduct," *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 62 (2006), and is hardly akin to a statute prohibiting the "selling or buying [of] a book" on a specific topic. Pl. Opp. at 5. Nor does Plaintiff's contention that S.7882 regulates the "content" of the algorithmic recommendation alter the outcome; it is that very content that fuels the anticompetitive conduct. *See U.S. v. Hansen*, 599 U.S. 762, 783 (2023) ("Speech intended to bring about a particular unlawful act has *no social value*; therefore, it is unprotected.") (citing *Giboney* and *U.S. v. Williams*, 553 U.S. 285, 298 (2008) (emphasis added)).[3]

Indeed, this Court rejected a similar argument in *Universal City Studios, Inc. v. Reimerdes*, 82 F.Supp.2d 211 (S.D.N.Y. 2000). The defendants claimed that an injunction prohibiting them from posting computer code that decrypts copyrighted DVDs would violate their right to free speech. But *Giboney* and its progeny precluded the defendants from "latch[ing] onto the expressive aspect [of the decryption code] in order to shield a key aspect of a chain of events, the main purpose of which is unlawful." *Id.* at 223. In this case, the algorithmic recommendation lacks any expressive value and is the "key aspect of a chain events" resulting in artificially inflated rents.[4]

---

[3] By Plaintiff's logic, the government would be barred from taking down a "White Applicants Only" sign due to the content and "message" being conveyed. Fortunately, that is not the law. *FAIR*, 547 U.S. at 62. And S.7882 is not a content-based restriction of protected speech in any case. Memo. at 21-22. Plaintiff similarly errs in arguing that the statutory exemption in § 340-(b)(1)(c) renders *Giboney* inapplicable. Pl. Opp. at 8. The exemption has no bearing upon the fact that the algorithmic recommendation regulated by §§ 340(b)(2) and (3) facilitates anticompetitive conduct. Nor does the exemption affect the constitutionality of S.7882 either. Memo. at 16-17, 20-21, 23.

[4] Plaintiff also asserts that S.7882 imposes a prior restraint on speech supposedly by restricting these algorithmic recommendations "preemptively." Pl. Opp. at 6. But Plaintiff's argument has no bearing upon whether S.7882 regulates conduct or speech. Moreover, the Second Circuit held in *Am. Medical Ass'n v. FTC*, 638 F.2d 443, 451-52 (2d Cir. 1980) ("*AMA*"), *aff'd by equally divided Court*, 455 U.S. 676 (1982), that antitrust statutes do not impose an unconstitutional prior restraint on speech. Memo. at 21, n.8. Plaintiff's opposition fails to even address *AMA*.

Finally, Plaintiff contends that S.7882 is not a genuine antitrust law because the statute does not distinguish between pro-competitive and anti-competitive activity, and because Defendant cannot "demonstrate" that Plaintiff's software facilitates anticompetitive agreements. Pl. Opp. at 10. But Plaintiff fails to cite any allegations in the Complaint in support of this argument, nor a single First Amendment decision. Pl. Opp. at 11-13. *See also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 429-36 (1990) (government was not required to establish "market power" of individuals engaging in restraints of trade to justify prohibitions on such conduct under First Amendment).

Plaintiff is merely rehashing the meritless argument, raised in support of its motion for a preliminary injunction, that Defendant cannot prove the current version of Plaintiff's software violates antitrust law. ECF No. 20 at 24-26. Plaintiff once again cites to federal antitrust cases as well as the purported "preliminary analysis" of Dr. Loren Hitt. Pl. Opp. at 10-13. But Defendant demonstrated that Plaintiff's argument, as well as its reliance upon Dr. Hitt's declaration, is frivolous and immaterial to Plaintiff's First Amendment claim. Memo. at 23-24.[5]

In sum, Plaintiff's opposition further demonstrates that the Complaint fails to state a plausible First Amendment claim.

## II. PLAINTIFF'S CHALLENGE TO S.7882 FACIALLY AND AS-APPLIED TO ITS LANDLORD CLIENTS IS DEFICIENT AS A MATTER OF LAW

Plaintiff's facial challenge to S.7882 is subject to dismissal, as the threadbare factual allegations in the Complaint fail to plausibly show that S.7882's unconstitutional applications substantially outweigh its constitutional ones. Memo. at 12. Plaintiff's opposition serves to bolster

---

[5] Plaintiff asserts throughout its opposition that Defendant has failed to "rebut" Dr. Hitt's purported analysis. Pl. Opp. at 1, 8, But Defendant is under no obligation to proffer its own "data" and antitrust "analysis," at taxpayer expense, in this First Amendment case. *Id.* at 13, n.3. Indeed, Defendant emphasized that Dr. Hitt's declaration has no bearing upon the constitutionality of S.7882 in the first place. Memo. at 24, n.11.

6

Defendant's argument: Plaintiff does not cite any allegations in the Complaint in support of its assertion that S.7882 is facially unconstitutional. Pl. Opp. at 26-27. And Plaintiff's opposition fails to establish that S.7882 is facially unconstitutional "as to the speakers and the audience" in any case. *Id.* at 27. As discussed above, Plaintiff's assertion that S.7882 only restricts algorithmic recommendations, and does not target any "independent" conduct to restrain trade, is meritless. *Supra* at 3-4.

Plaintiff's opposition also reaffirms that its purported as-applied challenge to S.7882 on behalf of its landlord clients is deficient as a matter of law. Indeed, Plaintiff fails to cite any First Amendment case holding that an as-applied challenge can be brought on behalf of third parties. The sole decision Plaintiff does cite, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988), undercuts Plaintiff's argument. The Supreme Court made clear that the narrow exception in First Amendment cases to the general prohibition on third party standing is applicable in a "pre-enforcement facial challenge." *Id.* at 392.

Plaintiff's argument is meritless in any case. Plaintiff asserts that it may file suit on behalf of its landlord clients because S.7882 supposedly prevents Plaintiff's clients from receiving recommendations. Pl. Opp. at 27. But that is not the applicable standard for establishing third party standing: Plaintiff must plausibly show that these landlords are "refrain[ing]" from engaging in protected speech due to S.7882's "very existence." *Am. Booksellers*, 484 U.S. at 392-93 (cleaned up).

Plaintiff claims that the Complaint satisfies this standard. Pl. Opp. at 27 (citing Compl., ¶ 51). But the cited paragraph merely proffers the conclusory assertion that S.7882 "chill[s] protected speech," and the allegation lacks "sufficient factual matter" in support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Plaintiff also points to the declaration of its Senior Vice

7

President, Amy Dreyfuss. Pl. Opp. at 27 (citing Dreyfuss Decl., ¶ 26). Once again, Plaintiff cannot stray beyond the four corners of the Complaint to defeat Defendant's motion. Moreover, Dreyfuss merely speculates that Plaintiff "risks permanently losing customers" if S.7882 goes into effect, and Dreyfuss does not even attempt to argue that Plaintiff's customers are refraining from engaging in protected speech due to S.7882's existence. Accordingly, the Court should dismiss Plaintiff's facial challenge to S.7882, as well as Plaintiff's purported as-applied challenge on behalf of its clients.

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Defendant respectfully requests that the Court grant her motion and dismiss the Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York  
February 27, 2026

Respectfully submitted,

LETITIA JAMES  
Attorney General  
State of New York  
By:  
      /s/  
Yuval Rubinstein  
Special Litigation Counsel  
28 Liberty Street  
New York, New York 10005  
(212) 416-8673  
yuval.rubinstein@ag.ny.gov

8

## **CERTIFICATION**

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Complaint contains 2,528 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

                                                            _____/s/_____
                                                            Yuval Rubinstein