UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REALPAGE, INC.,

Plaintiff,

- against -

LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

Defendant.

Case No. 1:25-cv-9847 (VEC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 29, 2026 OPINION & ORDER**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8673

Yuval Rubinstein
Special Litigation Counsel
of Counsel

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

STANDARD OF REVIEW ........ 2

ARGUMENT ........ 2

CONCLUSION ........ 4

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) .................... *passim*

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ..........................................................................4

*Real Estate Board of New York, Inc. v. City of New York*, 182 F.4th 140 (2d Cir. 2026)................4

*Schoolcraft v. City of New York*, 298 F.R.D. 134 (S.D.N.Y. 2014) .................................................2

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .............................................................2

*T.Z. v. City of New York*, 634 F.Supp.2d 263 (E.D.N.Y. 2009) .......................................................2

*Vugo, Inc. v. City of New York*, 931 F.3d 42 (2d Cir. 2019) ...........................................................2

**STATE STATUTES**

N.Y. Gen. Bus. Law § 340-b .........................................................................................................1

N.Y Gen. Bus. Law § 340-b(2) .....................................................................................................1

N.Y Gen. Bus. Law § 340-b(3). ...........................................................................................1, 2, 3, 4

Defendant Letitia James ("Defendant"), in her official capacity as New York State Attorney General, respectfully submits this memorandum of law in support of her motion for reconsideration of the Court's September 29, 2026 Opinion & Order granting, in part, Plaintiff RealPage, Inc.'s ("Plaintiff") motion for a preliminary injunction (ECF No. 52) ("the Order"), pursuant to Local Civil Rule 6.3.

## PRELIMINARY STATEMENT

On November 26, 2025, Plaintiff RealPage, Inc. ("Plaintiff") brought this First Amendment challenge to S.7882, a new State statute regulating pricing algorithms that are utilized to facilitate anticompetitive conduct amongst residential real estate landlords. *See* N.Y. Gen. Bus. Law § 340-b ("the Act"). Plaintiff subsequently filed a motion for a preliminary injunction. ECF No. 19. The Order denied Plaintiff's motion as to Section 2 of the Act, which applies to Plaintiff and other technology companies that license such software. However, the Order granted Plaintiff's motion as to Section 3 of the Act, which applies to the landlords that utilize the software's recommendations to set rents and lease terms. The Order determined that, "based on the current record," Defendant had not established a "reasonable fit" between the Act's prohibition of both nonpublic and public data and its legislative goal of prohibiting price-fixing agreements in the residential housing market. *Id.* at 20.

Defendant respectfully submits that the Order overlooked the record that Defendant submitted in opposition to Plaintiff's motion. In particular, the Declaration of Elinor Hoffmann ("Hoffmann Decl.") explained why the Act regulates both public and nonpublic data, and addressed the Court's concerns about the Act's sweep. ECF No. 41, ¶¶ 14-15. Accordingly, the Court should grant Defendant's motion and vacate the preliminary injunction, so that Defendant can fully enforce the Act.

## STANDARD OF REVIEW

A motion for reconsideration may be granted where the movant "can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is "appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice." *T.Z. v. City of New York*, 634 F.Supp.2d 263, 268 (E.D.N.Y. 2009); *Schoolcraft v. City of New York*, 298 F.R.D. 134, 138 (S.D.N.Y. 2014) (granting reconsideration based upon "additional facts" the Court's opinion overlooked that "alter the conclusion reached by the court") (cleaned up).

## ARGUMENT

### THE RECORD SUBMITTED BY DEFENDANT JUSTIFIES VACATUR OF THE PRELIMINARY INJUNCTION

The Order determined that, under the commercial speech analysis set forth in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980), Section 3 is premised upon a substantial government interest in targeting software programs that increase rents and aggravate the State's affordable housing crisis. Order at 17. The Order further determined that the State had properly relied upon research in order to identify and address legitimate harms to consumers, thus advancing the State's interest. *Id.* at 18-19. Moreover, the Order acknowledged the State is afforded "considerable leeway" under *Central Hudson*'s fourth prong in determining the appropriate means to further its legitimate government interest. *Id.* at 20 (quoting *Vugo, Inc. v. City of New York*, 931 F.3d 42, 58 (2d Cir. 2019)).

The Court nonetheless determined that, "based upon the current record," the State had not established a reasonable fit between Section 3 of the Act and its legislative goals. Order at 20. The

Order asserted that Section 3 prohibits a landlord from accepting algorithmic pricing recommendations collected from public data and is "undiscerning in targeting software without regard to its use of public versus non-public data." *Id.* at 20-21. The Order further added that the State would need to provide a "better explanation" going forward as to how prohibiting price recommendations based upon public data advances the State's interest in prohibiting price-fixing in the apartment rental market. *Id.* at 20.

Defendant respectfully submits that the Order overlooked Elinor Hoffmann's January 6, 2026 declaration, which provided that very explanation. ECF No. 41. Indeed, Defendant cited to the Hoffmann Declaration, in her January 9, 2026 memorandum in opposition to Plaintiff's motion, in explaining why the Act satisfies *Central Hudson*'s fourth prong. ECF No. 40, at 20.

In particular, Hoffmann explained that the Act is designed, in part, to rectify an information asymmetry between landlords and renters, which applies to both nonpublic and public data. Hoffmann Decl., ¶ 14. Hoffmann further explained that the distinction between "public" and "private" data is also difficult to draw, as the ostensibly "public" data sets that landlords provide to Plaintiff and other technology companies may not be replicable by searching or scraping public sources such as StreetEasy or Zillow. *Id.* The Act thus does not distinguish between nonpublic and public data because either type of data, utilizing the software's "coordinating function," can potentially be utilized by landlords to charge higher rents than a competitive market would bear.

However, Hoffmann emphasized that property owners and managers, acting individually, *can* continue to search public sources to see what rents and terms are being demanded by other landlords, and to use that information in making their own pricing decisions. *Id.*, ¶ 15. It is the pricing algorithm's coordinating function, using granular data from numerous sources (whether nonpublic or public), that is harmful to tenants and to the public. *Id.*

In sum, the Hoffmann Declaration explains how Section 3 is reasonably tailored to address the harms to consumers caused by pricing algorithms in the residential real estate market, whether the harms are based on public or nonpublic data. The Hoffmann Declaration further establishes that Section 3 does not prohibit "normal commercial conduct" by landlords, Order at 20, who remain free to draw upon public websites and analytical tools to set rental prices and terms so long as the software's algorithmic "coordinating function" is not utilized.

Because the State "developed a regulation that is a reasonable way to address the problem it has identified," the "fourth and final prong of the *Central Hudson* test is satisfied." *Real Estate Board of New York, Inc. v. City of New York*, 182 F.4th 140, 160-61 (2d Cir. 2026) ("*REBNY*") (cleaned up) (upholding City of New York's ban on brokers' fees)..[1] Moreover, Plaintiff's February 9, 2026 reply brief (ECF No. 45) failed to even address Hoffmann's explanation set forth in the declaration, much less proffer "substantial proof" that Section 3 does not constitute a reasonable fit to advance the State's substantial interests. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Accordingly, the Court should grant Defendant's motion and vacate the preliminary injunction as to Section 3, so that Defendant can enforce the Act.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that the Court grant her motion for reconsideration of the September 29, 2026 Order to the extent the Order granted Plaintiff's motion for a preliminary injunction as to Section 3, vacate the preliminary injunction, together with such other and further relief as the Court deems just and proper.

[1] The Second Circuit's decision in *REBNY* was issued on July 16, 2026, after Plaintiff's motion was fully briefed, and was cited by Defendant in her August 13, 2026 response to Plaintiff's notice of supplemental authority. ECF No. 51 at 2, n.1.

Dated: New York, New York
October 13, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
By:
________/s/________________________
Yuval Rubinstein
Special Litigation Counsel
28 Liberty Street
New York, New York 10005
(212) 416-8673
yuval.rubinstein@ag.ny.gov

**CERTIFICATION**

In accordance with Rule 6.3 of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that the foregoing Memorandum of Law in Support of Defendant's Motion for Reconsideration contains 1,210 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

____/s/_____________
Yuval Rubinstein